In re Maris K. **RINEER** and Diane M. **Rineer,** Debtors.

Maris K. **RINEER** and Diane M. **Rineer,** Plaintiffs,

v.

BANK OF the NORTH SHORE, Defendant.

Bankruptcy Nos. 82 B 00044, 82 A 1250.

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 14, 1982.

E. Paul Rustin, Chicago, Ill., for plaintiffs.

Sherwin Willens, Wilmette, Ill., for defendant.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action comes to be heard on a complaint filed by the debtors, Maris and Diane Rineer (hereinafter referred to as plaintiffs) against the Bank of the North Shore (hereinafter referred to as North Shore) to rescind a security interest held by North Shore in the plaintiffs' residence. The plaintiffs filed a motion for summary judgment, which was denied by this court pursuant to a written opinion on August 17, 1982. *In re Rineer*, 22 Bankr. 447 (Bkrtcy. N.D.Ill.1982). Accordingly, this controversy proceeded to hearing, with both parties submitting written briefs.

In May of 1978, North Shore financed plaintiffs' purchase of a 1978 Dodge motor home under a retail installment contract. Subsequently, the plaintiffs defaulted on the contract. North Shore notified the plaintiffs that the vehicle would be repossessed unless the arrearages were paid in full. Plaintiffs requested that North Shore refrain from repossessing the vehicle, and North Shore agreed, provided that the plaintiffs give North Shore a second mortgage lien on their residence at 6922 Chestnut, Hanover Park, Illinois as additional collateral for the obligation existing under the retail installment contract. On June 3, 1980, the plaintiffs executed an addendum to their original contract which gave North Shore a second mortgage on their residence. The plaintiffs executed a Trust Deed-second mortgage, which North Shore recorded in Cook County, Illinois on June 6, 1980. In April of 1981, the plaintiffs, who presumably were either unable or unwilling to make their payments under the contract, voluntarily returned the vehicle to North Shore.

On December 19, 1981, North Shore sold the motor home for $6,250.00, leaving a deficiency due from the plaintiffs in the amount of $10,757.57. North Shore filed a Proof of Claim for this amount in the plaintiffs' Chapter 13 proceeding.

The plaintiffs allege that the transaction in which North Shore obtained a second mortgage on the plaintiffs' residence is subject to Regulation Z of the Federal Truth Lending Act.[1] The plaintiffs further claim that: (1) under Regulation Z, North Shore is required to furnish the plaintiffs with notice of their right to rescind the June 3, 1980 transaction which resulted in North Shore's acquisition of a second mortgage in the plaintiffs' residence, (2) this notice was not given to the plaintiffs, and (3) in October of 1981, the plaintiffs rescinded the transaction through their own Notice of Rescission sent to North Shore. Accordingly, the plaintiffs believe that North Shore's security interest should be set aside.

Under Section 1631 of the Truth in Lending Act, 15 U.S.C. § 1631 (1976), and Sections 226.5 and 226.17 of Regulation Z, C.F.R. §§ 226.5, 226.17 (1982) (revised April 1, 1981), a creditor is obligated to disclose certain information regarding consumer credit transactions. Moreover, both the Act and the Regulation provide that the consumer has the right to rescind the transaction in certain instances. 15 U.S.C. § 1635 (1976); 12 C.F.R. §§ 226.15, 226.23 (1982). Specifically, Section 226.23(a)(1) of Regulation Z states:

> (a) Consumer's right to rescind. (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.

North Shore's position is that the right of rescission under Regulation Z does not apply to a closed-end credit transaction[2] where the security interest in a consumer's principal dwelling is acquired as additional collateral after the close of the consumer transaction and is given for a forebearance against repossession of the original collateral. Consequently, the issues to be decided by this court are: (1) whether North

---

1. The Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq. (1976), is popularly known as the "Truth in Lending Act." Its purpose "is to improve consumer credit protection through a more informed use of credit." Dumas v. Home Constr. Co. of Mobile, Inc., 440 F.Supp. 1386, 1388 (S.D.Ala.1977). Regulation Z is a body of regulation promulgated by the Federal Reserve Board under the Act. 12 C.F.R. § 226.1 et seq. (1982).

2. Closed-end credit is defined as "credit other than 'open-end credit.'" 12 C.F.R. § 226.-2(a)(10) (1982). The essential feature of open-end credit is that the "creditor reasonably contemplates repeated transactions." Id. at § 226.2(a)(20). Thus, open-end credit; i.e. a transaction made under a revolving credit arrangement, is distinguishable from a single purchase credit transaction. Smith v. A & B Sales Co., Inc., 479 F.Supp. 477 (N.D.Ga.1979). Since the transaction in the case at bar involves only a single purchase credit transaction, the transaction constitutes closed-end credit.

Shore's acquisition of a security interest in plaintiffs' residence constitutes a transaction in which Regulation Z applies, and (2) if it does, whether the plaintiffs properly rescinded the transaction, thereby negating North Shore's security interest.

■ There are three elements for the right to rescind under Section 226.23 of Regulation Z:

(1) a credit transaction;

(2) a transaction in which a security interest is or will be retained or acquired; and

(3) the security interest is in a consumer's principal dwelling.

North Shore has not contested that it acquired a security interest, or that the security interest was in a consumer's principal dwelling. Thus, the narrow point of controversy is whether there was a credit transaction which triggered the operation of the Truth in Lending Act and Regulation Z.

■ Credit is defined as "the right to defer payment of debt or to incur debt and defer its payment." 12 C.F.R. § 226.-2(a)(14) (1982). When North Shore acquired a security interest in the plaintiffs' residence, North Shore agreed to defer payment on the plaintiffs' debt arising from the plaintiffs' purchase of the motor home. Consequently, this court holds that a credit transaction under Regulation Z existed and that all the elements of the right to rescind have been satisfied. This conclusion is supported by the broad application of the Truth in Lending Act and Regulation Z as expressed in *French v. Wilson,* 446 F.Supp. 216, 219 (D.R.I.1978), where the court stated that the Act "protects a borrower from hastily entering into financing arrangements where the possibility exists that he could lose his home upon default if he should reconsider and attempt to disavow the contract entered into."

North Shore argues that its acquisition was not a new transaction, but rather it was merely a means of refinancing the original sale of the motor home. North Shore's position, however, does not comport with the refinancing exceptions under either the current provisions of Regulation Z or the provision of Regulation Z as in effect before the April 1, 1981 revision.

■ Currently, Section 226.23(f)(2) of Regulation Z provides that the right to rescind does not apply to refinancing "by the same creditor of an extension of credit already secured by the consumer's principal dwelling. If the new amount financed exceeds the unpaid principal balance plus any unearned unpaid finance charge on the existing debt, this exemption applies only to the existing debt and its security interest." 12 C.F.R. § 226.23(f)(2) (1982). Since North Shore was not already secured by the plaintiffs' principal dwelling at the time of the refinancing, this exception does not apply.

■ Similarly, Section 226.903 of Regulation Z, which was in effect prior to April 1, 1981, provided that refinancing, in general, was a new transaction and subject to all disclosure requirements. The right of rescession, however, did not apply to refinancing where the creditor already possessed a security interest in the consumer's principal residence and the new transaction does not exceed the amount of the unpaid balance plus any accrued and unpaid finance charge on the existing obligation. *See also Dumas v. Home Constr. Co. of Mobile, Inc.,* 440 F.Supp. 1386, 1388–89 (S.D.Ala.1977) (plaintiff had no right to rescind under Regulation Z where amount refinanced did not exceed unpaid balance plus all accrued and unpaid finance charges on the existing obligation). Since in the case at bar North Shore did not already possess a security interest in the plaintiffs' residence and since the alleged refinancing appears to include arrearages as well as unpaid principal and finance charges, this exception would also not be applicable.

■ Finally, the only other exception to the right to rescind which could reasonably be applicable in this controversy is Section 226.23(f)(1). 12 C.F.R. § 226.23(f)(1) (1982). This section provides that the right to rescind does not apply to a "residential mortgage transaction." A residential mortgage transaction is defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent

consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling." 12 C.F.R. § 226.2(a)(24) (1982). *See also French,* 446 F.Supp. at 218–19 (no exception to right to rescind where security interest was not incurred in connection with the initial construction of consumer's residence). Since North Shore's security interest was a second mortgage and not to finance the "acquisition or initial construction" of the plaintiffs' principal residence, the residential mortgage transaction exception is not applicable. Thus, with all the elements of the right to rescind being satisfied and no exception being applicable, this court holds that North Shore's acquisition of a security interest in the plaintiffs' residence was a transaction under the Truth in Lending Act and Regulation Z which entitled the plaintiffs to a right to rescind.

The second issue is whether the plaintiffs properly rescinded the transaction, negating North Shore's security interest. With regard to this issue, Section 226.23(a)(3) provides:

> The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section [i.e. notice by the creditor to the consumer of the right to rescind], or delivery of all material disclosures; whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings; the rescission period shall be extended in accordance with § 125(f) of the act.

12 C.F.R. § 226.23(a)(3) (1982).

■ Since North Shore never delivered to the plaintiffs a notice of their right to rescind the June 3, 1980 transaction, the plaintiff's right to rescind continued until 3 years after June 3, 1980, transfer of all of the plaintiffs' interest in the motor home, or upon sale of the motor home, whichever occurs first. Since the plaintiffs voluntarily returned the motor home to North Shore in April of 1981 (with the motor home being sold by North Shore at a later date), the plaintiffs transferred all of their interest in the motor home in April, 1981. Consequently, the plaintiffs' right to rescind expired in April, 1981, and the plaintiffs' attempted rescission in October, 1981 was ineffective. Accordingly, the plaintiffs' complaint to rescind North Shore's security interest is denied, and North Shore's claim for a security interest in the amount of $10,757.57 is allowed.

North Shore is to furnish a draft order in accordance with this opinion within five (5) days.*

---

* This decision is entered in compliance with the stay of enforcement until December 24, 1982 of the United States Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the General Order of the United States District Court for the Northern District of Illinois (July 14, 1982), and the United States Supreme Court decision in *In re Farmers Union Central Exchange, Inc.,* —— U.S. ——, 103 S.Ct. 197, 74 L.Ed.2d 159 (1982).